Paul L. Kertes and Helen A. Kertes v. Commissioner.
Kertes v. Commissioner
Docket No. 89866.
United States Tax Court
T.C. Memo 1962-158; 1962 Tax Ct. Memo LEXIS 151; 21 T.C.M. (CCH) 874; T.C.M. (RIA) 62158; June 27, 1962
*151 Howard E. Brune, Esq., 414 Pittock Block, Portland, Ore., for the petitioners. William J. Luff, Jr., Esq., and John D. Picco, Esq., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The Commissioner determined deficiencies in the petitioners' income taxes of $59 for the year 1957 and $494 for the year 1958. The only issues for decision are whether a debt owing to the petitioners which became worthless in 1956 is deductible as a business or nonbusiness bad debt and whether this Court may enter a decision with respect to years for which the Commissioner has determined no deficiency. Findings of Fact Some of the facts are stipulated and are found as stipulated. The petitioners are husband and wife. They filed their joint Federal income tax returns for all periods here involved with the district director of internal revenue at Portland, Oregon. Paul L. Kertes, (sometimes hereinafter referred to as the petitioner), had been in the restaurant business for 20 or 30 years prior to the years in question. From 1933 through 1956 the petitioner was the owner of all but two shares of the outstanding common stock of Town Tavern, Inc., which was *152 operating during all of these years as a restaurant in Portland, Oregon. During this period the petitioner was a director, officer and salaried employee of Town Tavern. In 1943 the petitioner borrowed approximately $25,000 from Town Tavern to purchase a chicken farm to be operated by him as a sole proprietorship. The petitioner purchased the farm for two reasons. One was the desire to acquire a profitable business. The other reason, which the petitioner had as an officer of Town Tavern, was to obtain a source of supply for chickens to be served in the restaurant. Town Tavern had been having difficulty obtaining chickens at a stable price and of an appropriate quality to be served in its restaurant. The operation of the farm was directed to raising chickens for use in Town Tavern restaurant. A breed of chickens particularly suited to restaurant use was the only kind raised on the farm. Experiments were made with both feed and breeding with a view to obtaining a high quality chicken. The chickens were never on the ground but were maintained from birth to use in raised enclosures. Town Tavern purchased all of its supply of chickens from the petitioner. Because of the fact that it *153 had a ready supply of high quality chickens, Town Tavern featured chickens on its menus and specialized in fried and broiled chickens. It sold not only chicken dinners but also sold uncooked chickens in lots of 12 per lot to customers who were attracted because of Town Tavern's reputation for selling high quality chickens. The petitioner thus sold between 25 percent and 40 percent of his chickens to Town Tavern at all times. They were sold to it for a uniform price of $1 per chicken, which was usually three or four cents a pound above the market price. However, not all of the petitioner's chickens could be sold through Town Tavern. The restaurant business required birds of a relatively equal size so that portions served to customers would be uniform. Thus, the restaurant bought only chickens that were approximately two pounds nine ounces at maturity; only about 50 percent of the petitioner's birds were of this size. The petitioner sold the remainder of his chickens through a wholesaler. The wholesaler who purchased these chickens had learned through Town Tavern of the petitioner's farm and reputation for selling high quality chickens and paid the petitioner several cents a pound *154 above the market price for his chickens. The petitioner entered the chicken raising business solely because he would have Town Tavern available as an outlet. He would not have entered the business if this had not been the case. From 1947 until 1956 Town Tavern was, from time to time, in need of cash. The petitioner, therefore, loaned various sums to it. These sums were loaned not from the petitioner's personal bank account but rather from the bank account he maintained for the farm or from loans for which farm property was the security. These loans were made from farm funds because it was in the interest of the farm to keep the restaurant operating as a market for its chickens. Loans and repayments were made as follows: Amount Loaned and
Advanced to Town
Amount Repaid
Year
Tavern, Inc.
to Petitioner
1947
$ 34,000.00
$ 2,433.91
1948
8,128.38
219.72
1949
4,300.00
13,042.27
1950
3,784.83
6,083.49
1951
14,073.85
10,872.00
1952
4,900.00
6,510.85
1953
9,328.76
5,849.51
1954
8,527.49
5,140.04
1955
12,720.18
7,900.00
1956
4,000.00
1,930.00
Total
$103,763.49
$59,981.79
Town Tavern, Inc., was adjudged bankrupt on November 23, 1956. At *155 that time the balance of these loans owing to the petitioner was as follows: Amount loaned and advanced by
petitioner to Town Tavern,
Inc., 1947-1956, inclusive
$103,763.49
Less: Petitioner's previous in-
debtedness to Town Tavern,
Inc.
15,139.59
$ 88,623.90
Less: Amounts repaid by Town
Tavern, Inc., to petitioner 1947-
1956, inclusive
59,981.79
Net amount of indebtedness
$ 28,642.11 [1]
This indebtedness became worthless in 1956. The original return filed by the taxpayers for 1956 did not claim this deduction and showed no tax liability. On December 23, 1959, they filed an amended return for 1956, claiming this deduction. At the same time they filed claims for refund for the years 1954 and 1955 based on a net operating loss carryback from 1956. On the same date they also filed amended returns for 1957 and 1958, claiming an additional deduction in each of those years based on a net operating loss carryover from 1956. The Commissioner disallowed the claimed business bad debt deduction for 1956, denied the claims for refund and determined deficiencies *156 for 1957 and 1958 based solely on the disallowance of the net operating loss carryover. The petitioner's loans to Town Tavern were proximately related to his business of raising and selling chickens. Opinion The respondent contends that the petitioner's loans to Town Tavern were not proximately related to his business of raising chickens, and thus when the balance owing to him became worthless it was deductible only as a nonbusiness bad debt. He makes no contention that the loans were not loans or that the debt did not become worthless in the year in which claimed. Further, he does not contend that the taxpayers are not entitled to carry over in 1957 and 1958 the unused balance of any loss determined to have occurred in 1956. The facts clearly show that the petitioner's farm was dependent on the Town Tavern restaurant for marketing a substantial percentage of its chickens. Therefore, loans made to Town Tavern on behalf of the farm were clearly proximately related to the petitioner's business of raising and selling chickens. Robert Cluett, 3rd, ; ; ; . *157 Therefore, the taxpayers are entitled to a business bad debt deduction in the amount of the loans that became worthless in 1956. The taxpayers seek relief for the years 1954 and 1955 as well as for the years 1957 and 1958. The Commissioner has determined deficiencies only for 1957 and 1958. Since our jurisdiction depends upon the determination of a deficiency, , our decision may relate only to the years 1957 and 1958. Decision will be entered under Rule 50. Footnotes
1. Apparently there is a mathematical error in the stipulation which shows this figure to be $28,641.11.↩